**The PORTER–CABLE MACHINE COMPANY, and Rockwell Manufacturing Company, Appellees,**

**v.**

**The BLACK AND DECKER MANUFACTURING COMPANY, Appellant.**

**No. 12174.**

United States Court of Appeals Fourth Circuit.

Argued June 20, 1968.

Decided Sept. 13, 1968.

Rehearing Denied Oct. 17, 1968.

Certiorari Denied Jan. 27, 1969.

See 89 S.Ct. 716.

---

Theodore S. Kenyon, New York City (Benjamin C. Howard, and Miles & Stockbridge, Baltimore, Md., C. Willard Hayes, and Cushman, Darby & Cushman, Washington, D. C., on brief) for appellant.

John D. Nies, Washington, D. C. (Strauch, Nolan, Neale, Nies & Kurz, Washington, D. C., Norman P. Ramsey, and Semmes, Bowen & Semmes, Baltimore, Md., on brief) for appellees.

Before BOREMAN, BRYAN and CRAVEN, Circuit Judges.

ALBERT V. BRYAN, Circuit Judge:

Infringement of patent 2,842,170, issued July 8, 1958, for a portable, powered saber saw (jigsaw) is here charged by the owner, The Porter-Cable Machine Company against The Black and Decker Manufacturing Company. Besides traversing the imputation, the defense also denies the patent's validity, saying that it was granted on the application of one not the originator of the alleged invention, and also that it suffered from obviousness, overclaiming and indefiniteness. 35 U.S.C. §§ 102, 103, 112.

Overruling these pleas the District Court in a comprehensive opinion, Porter-Cable Machine Company et al. v. Black and Decker Manufacturing Co., 274 F.Supp. 905 (D.Md. Oct. 23, 1967) sustained Nos. 1, 2 and 3 of the patent's claims, the remaining claim having been withdrawn. Also, the Court saw infringement and decreed appropriately towards recoupment of damages. On Black and Decker's appeal we decline to disturb the trial court's findings and conclusions.

The saw in suit is small enough to be held and applied by hand, very much as a manual clothes pressing iron. Sketchily, the components of it here relevant are a housing enclosing a motor and having a handle attached atop of it, the whole resting on a metal base plate, and a vertical serrated blade located near the front of the housing, extending downward from the motor, and moving up and down through a recess or slot in the front end of the base. The tool gets the name of saber or bayonet from the fact that the blade-end away from the motor is unattached.

In use the base of this kind of saw is pressed upon—over or under—the material to be cut. With the unit pushed forward, the rapidly descending and ascending toothed edge of the blade cuts the material as the recess in the base passes along the surface of the material. The experience was that when the blade

engaged the edge of the work piece, especially when composed of layers, such as plywood, some splintering or chipping of it frequently occurred despite the pressure upon it of the base on each side of the recess to hold it firm while being cut. In part this was due to the flexibility of the blade because the far end of it was free and unattached. Solution of this problem was the desideratum of the patent. The corrective means utilized was to place a metal insert in the inner end of the recess to confine the play of the blade without restricting its movement. Inventiveness is claimed in the design and operation of the insert.

Determination of this controversy called for resolution of the issues of prior art, anticipation, utility, obviousness and infringement. Confessedly, they present close questions. The others —overclaiming and indefiniteness—may be discarded as insubstantial. These controlling inquiries are factual, as Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 694, 15 L.Ed.2d 545 (1966) declared:

"While the ultimate question of patent validity is one of law, [Great] A. & P. Tea Co. v. Supermarket [Equipment] Corp., supra, [340 U.S. 147], at 155 [71 S.Ct. 127, 95 L.Ed. 162], the § 103 condition, which is but one of three conditions [non-obviousness, utility and novelty] each of which must be satisfied, lends itself to several basic *factual* inquiries. Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved. Against this background, the obviousness or nonobviousness of the subject matter is determined. Such secondary considerations as commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented.
 * * * "

That infringement, too, is a matter of fact is generally agreed. Graver Mfg. Co. v. Linde Co., 339 U.S. 605, 609, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Hazeltine Research v. Admiral Corp., 183 F.2d 953, 955 (7 Cir. 1950).

Literally, therefore, decisions upon these issues come within the commandment of Rule 52 F.R.Civ.P., that we honor them unless clearly in error. Here the rule is significantly nerved and inspirited by the judicial scrutiny and deliberation from which the findings evolved. The pattern for decision prescribed in Graham v. Deere, supra, 383 U.S. 1, 86 S.Ct. 684 was pursued almost ad verbum. The primary inquiries there directed were exhausted by the District Judge who arrayed and measured the evidence on each. Secondary considerations were also appraised. These included the outstanding but previously unanswered need for a remedy for the splintering or chipping, the earlier ineffectual efforts to find a correction and the apparent operational success of the patented article, as indicated by its commercial success. Then was added the statutory presumption of validity. 35 U.S.C. § 282.

Likewise the Court looked carefully at appellant B and D's devices accused of infringing. They were inserts too, respectively designated as the original and a revised one, and appeared in three models of the power-operated manual saws manufactured by B and D. Their placement and operation corresponded to Porter-Cable's insert, although there were some differences in the design and material of them. The District Judge carefully explained and demonstrated this similitude.

Resolution of the issues in the case required and received painstaking study. Without a jury, the trial occupied six days; both experts and pragmatists gave evidence to the critical points of the claims. The stature of the "clearly erroneous" rule is heightened in these circumstances. As the Court said in Graver Tank & Mfg. Co. v. Linde Air

Products Co., 336 U.S. 271, 274, 69 S.Ct. 535, 537, 93 L.Ed. 672 (1949):

"Rule 52(a) of the Federal Rules of Civil Procedure provides in part: 'Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.' To no type of case is this last clause more appropriately applicable than to the one before us, where the evidence is largely the testimony of experts as to which a trial court may be enlightened by scientific demonstrations. This trial occupied some three weeks which, as the record shows, the trial judge visited laboratories with counsel and experts to observe actual demonstrations of welding as taught by the patent and of the welding accused of infringing it, and of various stages of the prior art. He viewed motion pictures of various welding operations and tests and heard many experts and other witnesses. He wrote a careful and succinct opinion and made findings covering all the factual issues."

From these foundation facts, patentability of the device in suit soundly follows as a conclusion of law, and the declaration of infringement must also be upheld.

Affirmed.

CRAVEN, Circuit Judge (dissenting):

The Examiner rejected all of Porter's claims for the reason that to "use an insert such as shown in Cross or Colby in a saber type saw such as is shown by Forsberg is not considered invention. It would only amount to a matter of mechanical skill to mount such an insert in the base plate * * * of Forsberg if desired." Thereafter, Claims 1, 4 and 5 were cancelled and Claims 2 and 3 were amended by inserting the words "free floating" before the phrase "limited lateral movement of the insert relative to the base plate." It was argued to the Examiner that: "Applicants wish to place particular emphasis upon the fact that the insert is free floating. This is

very important since when portable saws of this nature are to be commercially manufactured, it is impossible to make the tolerances on the parts of the saw such that no mis-alignment of the blade will result. Therefore, in order to compensate for this mis-alignment but at the same time prevent chipping of the work piece, any insert which is used with a portable saw of this type must be free to float or move laterally in the base plate."

On the next official action, the claims which included the "free floating" characteristic were allowed, but Claim 1, which simply called for an insert having capability of "limited movement relative to the base plate in a plane parallel thereto," was finally rejected and was cancelled by Porter.

There is nothing new in this patent unless it be the "free floating" insert. Inserts for various purposes, including facilitating sawing, are old. It does not seem to me to be invention to fit an insert loosely into the base plate of a saber saw. As one of Porter's own employees testified, "if this thing was going to work it had to be a loose fit * * *." Asked whether "it just seems perfectly obvious to you that it was necessary to have a loose fit between these parts?", the same witness replied, "That's right."

I am of the opinion that the claims in the patent are obvious to one skilled in the art and anticipated by the prior patents discussed in the opinion of the district court. Porter-Cable Mach. Co. v. Black & Decker Mfg. Co., 274 F.Supp. 905 (D.Md. Nov. 3, 1967).

If the patent be deemed valid, I would hold it not infringed by Black and Decker's saber saw and its insert. This insert is of a flexible material which is squeezed or depressed into the socket. It is a tight fit rather than a loose fit although the softness and resilience of the material permits a giving way to the motion of the saw blade. Certainly it does not move laterally nor float freely. File wrapper estoppel bars the application of the doctrine of substantial equivalents. Carter Prods., Inc. v. Colgate-Palmolive Co., 269 F.2d 299 (4th Cir. 1959).

## OPINION AND ORDER ON PETITION FOR REHEARING

In its petition for rehearing, the appellant misreads our opinion. The District Court's adjudication of patentability is not upheld as a finding of fact; as plainly stated, it is sustained "as a conclusion of law". After accepting the trial court's fact findings of novelty and utility, and its "basic factual inquiries", Graham v. John Deere Co., 383 U.S. 1, 17, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), in respect to obviousness, we held as a matter of law the improvement in the device in suit to be patentable. Our opinion's inclusion of "obviousness" as a factual issue referred to these "basic factual inquiries". Incidentally, we have no occasion now to classify the ultimate issue of obviousness as one of fact or law; we join in the District Judge's determination, whether of fact or law, that the assertion of obviousness was not sustained.

Rehearing denied.