**WAYNE–GOSSARD CORPORATION,**
Appellee,

v.

**RUSSELL HOSIERY MILLS, INC.,**
Appellant.

No. 72–2344.

United States Court of Appeals,
Fourth Circuit.

Argued April 3, 1973.

Decided Aug. 30, 1973.

David Rabin, and Welch Jordan, Greensboro, N. C. (Jordan, Wright, Nichols, Caffey & Hill, Greensboro, N. C., on brief), for appellant.

Charles B. Park, III, Charlotte, N. C. (Joseph W. Grier, Jr., W. Thad Adams, III, Parrott, Bell, Seltzer, Park & Gibson, and Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, Charlotte, N. C., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and BUTZNER and FIELD, Circuit Judges.

FIELD, Circuit Judge:

Russell Hosiery Mills, Inc., appeals from an order of the district court which held that certain hosiery products of Russell infringe Claims 4 and 5 of the Sarbo United States Reissue Patent No. RE 26,667, which patent is owned by the plaintiff Wayne-Gossard Corporation. The order of the district court also enjoined Russell from further acts of infringement.

The plaintiff's predecessors, Wayne Knitting Mills and The May Corporation, previously sued Russell for infringement of Claim 3 of the original Sarbo United States Patent No. 3,-059,458, and in that litigation the district court held the original patent to be valid and Claim 3 to have been infringed by Russell.[1] Upon appeal we held Claim 3 of the original patent to be invalid for overclaiming and indefiniteness,[2] 35 U. S.C. Section 112. Shortly after that decision the inventor, Sarbo, and Wayne applied to the Patent Office for a reissue of the original Sarbo Patent pursuant to the provisions of 35 U.S.C. Section 251. The Sarbo reissue application included new Claims 4 and 5 and cancelled the original Claim 3 of the Sarbo Patent. Claim 4 of the Reissue Patent is couched in substantially the language of the original Claim 3, but incorporates additional language responsive to the decision of this court in the former appeal.[3]

1. Wayne Knitting Mills v. Russell Hosiery Mills, Inc., 274 F.Supp. 934 (M.D.N.C. 1967).

2. Wayne Knitting Mills v. Russell Hosiery Mills, Inc., 400 F.2d 964 (4 Cir. 1968), cert. denied, 393 U.S. 1064, 89 S.Ct. 717, 21 L. Ed.2d 707 (1969).

3. Claim 4 of the Reissue Patent reads as follows, the additional language which was added to Claim 3 being underlined:
4. *A knitted foot cover characterized by being extremely elastic and extensible for being fitted in a highly stretched condition upon the asymmetrical configuration of the* lower part of the foot of a wearer with the foot cover being of such height as to be positioned below the ankle in foot hugging, stretched condition, completely concealed from view when worn within low cut shoes, said foot cover comprising
    a seamless stretchable tubular rim including at least some rubber threads,
    said rim being adapted to form an opening for a foot entry,
    a seamless *stretchable* tubular body having an axial length greater than that of said rim and connected with said rim,
    said rim and said body, each, respectively, consisting of the same knitting structure

At the time the Sarbo Reissue Patent was granted, Russell was making and selling foot covers which had a substantially straight seam across the bottom similar to those which were the subject matter of the prior litigation. Upon learning of the Sarbo Reissue Patent, however, counsel for Russell prepared sketches of foot covers with sinuous contour seams which, in their opinion, could be manufactured without infringement of Claims 4 and 5 of the Reissue Patent. In the present litigation Russell defended solely upon the grounds of non-infringement, and did not challenge the validity of the Sarbo Reissue Patent either in the court below or upon this appeal.

The Wayne foot cover as outlined in Claims 4 and 5 of the Reissue Patent is characterized by a seamless tubular elasticized rim adapted to form the foot entry opening with a seamless tubular body having a length greater than that of the rim and connected therewith. The foot cover has a seam formed at the end of the body opposite the rim to form a symmetrical pouch-like body which can be adapted to function as tip, sole and heel portions and can be worn in reversed positions. The novel function of the Wayne foot cover is that the elasticized rim is positioned below the ankle in a foot hugging stretched condition and is completely concealed from view when worn with low cut shoes. As stated, it has no definite toe and heel portions and can be conveniently worn in reversed positions upon the foot.

In comparing the products of Wayne and Russell, the district court found that Russell's styles 1331, 1333 and 1339 were characterized by being extremely elastic and extensible and fitting in a highly stretched condition upon the foot with the cover being positioned below the ankle in a foot hugging and stretched condition completely concealed from view when worn with low cut shoes. The accused styles are comprised of a seamless stretchable tubular body having an axial length greater than the rim, the rim and body consisting of the same knitting structure throughout its axial length and its entire periphery, and a seam formed at the end of the body opposite the rim. The accused foot covers are closed by a contoured seam which when accurately sewn results in one side of the cover being in a relaxed condition and some one-fourth inch shorter than the other side. The district court found, however, that by reason of the high degree of stretchability, the so-called contour seam disappears and becomes straight under slight stretching, with the result that each foot cover is reversible from heel to toe. The district court further found that the seam in the accused Russell styles functions in the same manner and accomplishes the same result as the seam disclosed and claimed in the Sarbo Reissue Patent and produces no useful result or improvement thereon.

In the light of these findings of the district judge it would appear that the only purpose served by the contour seam in the Russell foot covers is to avoid being a Chinese copy of the foot covers described in Claims 4 and 5 of the Sarbo Reissue Patent. The law is well settled that "if the defendant in fact departs from the teaching of the patent, not making a simulated departure merely while copying the essence of the patent, it cannot be held liable for infringement. * * * It is equally axiomatic in the law of patents that the addition of a useless or unimportant

throughout its axial length and throughout its entire periphery, and

  a seam formed at the end of said body opposite said rim to form a symmetrical pouch-like body, and

    said body being adapted to function as tip, sole and heel portions of said foot cover,

  *whereby upon placing the foot cover on the lower part of a foot, the attendant*

*stretching of the foot cover reduces the combined axial length of said rim and said body and the foot cover fits over and hugs only the lower portion of the foot with said rim positioned on the asymmetrical portion of the foot below the ankle.*

Claim 5 of the Reissue Patent reads substantially the same as Claim 4.

 

item cannot avoid infringement, but is recognized as a frequent resort of infringers to mask their true purpose." Johnson & Johnson v. Carolina Lee Knitting Co., 258 F.2d 593, 597 (4 Cir. 1958). We agree with the conclusion of the district court that every essential element of the foot cover described in the claims of the Reissue Patent is embodied in the Russell products and clearly infringes those claims. *See* Marston v. J. C. Penny Company, 353 F.2d 976 (4 Cir. 1965); Frick Co. v. Lindsay, 27 F.2d 59 (4 Cir. 1928).

Russell seems to argue that the term "seam" in the Sarbo claim means a "looped seam" and that this is in some manner indispensible to the formation of a "symmetrical pouch-like body" as embodied in the Reissue Patent. However, this contention finds no support in the record. In the original proceedings in the Patent Office, the attorney for Sarbo candidly stated that the stretchable seam may be formed by a method known *per se* on any number of existing machines. Additionally, we note that in the former litigation involving Claim 3 of the original Patent, the district court found that "[t]he sock of the Sarbo invention can be made on practically any type of circular hosiery machine and can be closed along the bottom by a conventional looping operation or seamed with a straight machine seam by relatively unskilled personnel." This finding went unchallenged by Russell and appears to have been accepted by this court upon the former appeal.

Finally, Russell contends that under the finding of the district court it is precluded from the legitimate use of the teaching of the expired Grey Patent, No. 2,333,373. As counsel for Wayne points out, Grey is no stranger to this controversy for it was thoroughly considered and analyzed by the Patent Office as well as Judge Gordon in the prior litigation and Judge Merhige in the present case. Both of these judges found that there is no suggestion in Grey for the placement of rubber in the upper welt portion nor is such a foot cover reversi-

ble. Judge Merhige concluded that the phrase "symmetrical pouch-like body" as used in the Reissue Patent was intended to distinguish the Sarbo product from foot covers of the type disclosed by Grey and others in which the cover has a definite toe and heel and can be worn only in a non-reversible position.

The findings and conclusions of the trial judge find solid support in the record and should not be disturbed upon appeal. *See* Graver Mfg. Co. v. Linde Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950); Porter-Cable Machine Co. v. Black and Decker Mfg. Co., 402 F.2d 517 (4 Cir. 1968), cert denied, 393 U.S. 1063, 89 S.Ct. 716, 21 L.Ed.2d 706 (1969); Carolina Lee Knitting Company v. Johnson & Johnson, 275 F.2d 91 (4 Cir. 1969).

The judgment of the district court is affirmed.

Affirmed.